IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **MITCHELL INTERNATIONAL, INC.;ABC INFOTECH, INC.** | **CIVIL NO. 04-2299 (PG)** |
| **Plaintiffs** | **Injunction, Copyright Infringement Trademark Infringement, Tort, Unfair Competition and Unjust Enrichment Violation of Contracts** |
| **Vs.** | |
| **MIGUEL GONZALEZ d/b/a MIOLVETTE AUTO COLLISION; MARTIN NAVARRO d/b/a R & R AUTO REPAIR; EDGARDO HERNANDEZ d/b/a PR EXCLUSIVE BODY PAINT; DORIS GARCIA d/b/a GARAGE GARCIA d/b/a GARAGE LOPEZ; OTTONIEL LANDRAU d/b/a LANDRAU AUTO REPAIR; JOSE QUIÑONES d/b/a TALLER QUIÑONES; PABLO LUGO d/b/a PARCELAS AUTO BODY REPAIR** | **Trial by jury is requested.** |
| **Defendants** | |

*COMPLAINT AND DEMAND FOR INJUNCTIVE RELIEF*

**TO THE HONORABLE COURT:**

**COMES NOW**, Mitchell International, Inc. (hereinafter Mitchell) and ABC Infotech, Inc. (hereinafter ABC Infotech), through their undersigned attorneys, and most respectfully state, allege and pray as follows:

I. NATURE OF THE ACTION, JURISDICTION AND VENUE

This is a Complaint for Injunctive Relief and Damages.  Count I states a claim for copyright infringement under the Copyright Act of 1976, as amended, 17 U.S.C., section 101, et seq; Count II states a claim for Trademark Infringement under the Lanham Trademark Act , 15 U.S.C.; Count III states a claim for Unfair Competition pursuant to the Lanham Trademark Act, 15 U.S.C., Section 1125(a);  Count IV states a claim for Violation of Contract under State Law..

This Honorable Court has subject matter jurisdiction pursuant to Title 28, U.S.C., Sections 1331 and 1338 (a) and (b).  Venue is proper in this district under Title 28, U.S.C., Sections 1391 and 1400 because Defendants have their place of business or residence in Puerto Rico and all their actions occurred in this Judicial District.  This Honorable Court has supplemental jurisdiction to entertain the state law claim as it is substantially related to the federal law claims.

## II.     *PARTIES TO THIS CASE*

1.     Plaintiff Mitchell International, Inc. (hereinafter "Mitchell") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the city of San Diego, California.  Mitchell is in the business of publishing information and technology tools for the Automobile Collision, Repairs and Property, and Casualty Insurance Industries.  Mitchell is the author and owns the rights to the computer software programs involved in this case and its trademark.

2.     Plaintiff ABC Infotech, Inc. (hereinafter ABC Infotech) is a corporation with offices and operations in Puerto Rico.  It was previously known as Auto Body Connection Corp. and is presided by Mr. Zoilo García.  Since 1991 Mitchell has been exclusively represented in Puerto Rico and the U.S. Virgin Islands by ABC Infotech and Mr. Zoilo A. García has served as Country Manager for Mitchell by virtue of a Country Management Agreement, which permits ABC Infotech to act as an independent business and represents Mitchell for sales, support and other related matters concerning Mitchell in Puerto Rico.

3.     Defendant Miguel Gonzalez is the is the owner of an auto body shop known as Miolvette Auto Collision located at Carolina, Puerto Rico.

4.     Defendant Martin Navarro is the is the owner of an auto body shop known as R & R

Complaint and Demand for Injunctive Relief                                                                                              - página 3

Auto Repair located at Luquillo, Puerto Rico.

5.   Defendant Edgardo Hernandez is the is the owner of an auto body shop known as Puerto Rico Exclusive Body Paint located at Rio Piedras, Puerto Rico.

6.   Defendant Doris Garcia is the is the owner of an auto body shop known as Garage Garcia a/k/a Garage Lopez located at Rio Piedras, Puerto Rico.

7.   Defendant Ottoniel Landrau is the is the owner of an auto body shop known as Landrau Auto Repair located at Rio Piedras, Puerto Rico.

8.   Jose Quiñones is the owner of an auto body shop known as Taller Quiñones located at Carr. 120, Km 3.6, Bo. Santana, Sabana Grande.

9.   Defendant Pablo Lugo is the owner of an auto body shop know as Parcelas Auto Body Repair located at Bo. Abuas Claras, Ceiba, Puerto Rico.

### III.   FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

11.   Plaintiff Mitchell is a leader in the development, marketing and distribution of computer software programs for use by the auto collision, repair and property and casualty insurance industries.  Mitchell's UltraMate™ and ImageMate™ programs are protected by federal copyright laws, trademark laws and regulations.

12.   Since 1995, Mitchell International, Inc. and ABC Infotech, Inc. have marketed the software known as UltraMate™, Puerto Rico version, for estimating automobile collision related damages as well as other related software, including ImageMate™, a digital photo imaging solution for auto physical damage digital photo documentation.

13.   The UltraMate™ software includes comprehensive databases of vehicle configurations, collision parts, and parts replacement labor time, as well as Puerto Rico specific

suggested retail prices for current vehicle makes and models. Additionally, it incorporates sophisticated algorithms to accurately calculate the dollar value of the damages.

14. Mitchell has invested substantial amounts of time and money resources in the development and maintenance of its tools, which it sells in the United States and Puerto Rico market on a subscription basis.

15. The Defendants' conduct by infringing on Mitchell's copyrights and trademark has caused Mitchell damages.

16. ABC Infotech has also invested substantial amounts of time, money, and resources in marketing, training, support, sales and other related efforts related to the successful development and marketing of the Ultramate™ Puerto Rico version and ImageMate™ programs among its paying customers and defendant's conduct have caused damages to it.

17. All of Plaintiff's paying customers have invested substantial amounts of time, money and resources in the correct usage of the UltraMate™ program and the conduct of Defendants, by illegally copying and using or facilitating to others the use of this software, has caused them damages.

18. In order for an auto body repair shop to obtain and use Mitchell's UltraMate™ software program, the business or shop owner (customer) must obtain from Mitchell, through ABC Infotech, a copy of the program, after entering into a subscription contract known as "End User License Agreement". The licensed copy is delivered to the customer on a CD-ROM, which is loaded by an ABC Infotech representative into the customer's personal computer hard disk. The customer is also given a User's Guide, which is part of the kit the customers licenses from Plaintiffs.

19. Mitchell will send an updated version of the UltraMate™ program to the client every month, showing the latest value of the listed parts, as well as other changes including new vehicle configuration.

20. The UltraMate™ program has a sixty (60) day security time out period, which impedes

the use of the most current CD-ROM after sixty (60) days. This feature is designed to protect Mitchell from illegal use of its programs by a customer that has ceased to be provided with CD-ROM's as a result of non-payment of the account and/or non renewal of an expired contract. However, an illegal use of a CD-ROM can be made beyond sixty (60) days by back dating the shop's computer and/or by copying data from an updated CD.

21. Once the UltraMate™ program is installed for the first time, it starts with estimate No. 1. When another estimate is to be made, the next consecutive number is assigned by the computer memory. All estimates will be reflected in the computer, unless the customer decides not to save the estimate after it is printed. The Court deems established that any auto body shop can do an estimate, print it, get paid for it and later decide not to save it, or if saved, to delete it later. This estimate will not be reflected when the information is later retrieved. By the same token, the shop owner can have an estimate printed, kept in the memory and later delete it from his records, or can erase the computer records on its use of the UltraMate™ program at any time.

22. Mitchell, through Infotech, charges $750.00 to a new customer for the installation and training of the UltraMate™ program. Thereafter the customer pays Mitchell, on the average, $330.00 a month for the use of the UltraMate™ program and receives revised updates of the program every month. Accordingly, the violation of Mitchell's copyrights by auto body shops represents a monthly loss of not less than $330 in rent to Mitchell. ABC Infotech gets paid 30% commission from the amount received by Mitchell on each contract, on the yearly anniversary.

23. Since its inception in the market, UltraMate™ Puerto Rico has become the standard benchmark for the industry with an estimated market share of electronic estimating in Puerto Rico of above ninety percent (90%).

24. Mitchell's and ABC Infotech's total user base (auto body shops and insurance industry staff members) grew steadily in Puerto Rico since 1996, when it hovered around 75 users, growing to

**Complaint and Demand for Injunctive Relief** - página 6

around 350 by 1998, and peaked to about 425 users in the year 2000. This customer base suffered a reduction by the end of 2001 and the first part of 2002, without any significant competition.

25. The major insurance companies in Puerto Rico rely on the UltraMate™ program for the evaluation of claims submitted by their insured clients.

26. The UltraMate™ program facilitates the work of the auto body shops in estimating auto body damages, as it has very actual information and permits a very fast completion of the estimate. This allows the auto body shops to do more estimates a day, incrementing their earnings and allows them to process every customer in a faster fashion, alleviating their inconveniences.

27. Since 1998 Plaintiffs had confronted sporadic illegal usage of Mitchell's software by some delinquent account customers who backdated their computers to continue using the software, despite the fact that the software had reached its sixty (60) days security time out period. Others obtained outdated copies of the software CD's from legitimate subscribers. As they were isolated cases, Mitchell, through ABC Infotech, handled them individually and effectively.

28. As a result of unverified information and tips generated in the last part of the year 2001 and more intense in the second and third months of 2002, plaintiffs decided to conduct a field investigation to establish if there were autobody shops making illegal use of Mitchell's protected programs because of access to the programs through unauthorized third parties, including former employees of ABC Infotech.

29. The field investigation was made in May and June 2002 by Consultant and Resources International, which company obtained evidence that Mitchell's UltraMate™ programs were being used illegally by some former and/or potential clients, including some of the defendants involved in this Complaint.

**Complaint and Demand for Injunctive Relief**  - página 7

30. Plaintiffs in June 2002 filed a civil Complaint against a first group of violators under Civil No. 02-1955 (PG). All of the defendants in Civil No. 02-1955 (PG) settled, except for three defendants against which a Judgment on default was entered after a trial.

31. The defendants involved in this Complaint were part of a group of violators that were on July 2002 given an opportunity to: cease and desist their conduct; pay a much lower penalty for their past violations; and to enter into an End User License Agreement legalizing their use of Mitchell's programs.

32. Mitchell has complied with all statutory requirements of the Copyright and Trademark Acts in order to obtain and maintain the validity of its copyright and trademark protection over its products. It had not licensed or authorized any of the Defendants to copy its programs or to make use of its programs or to offer its programs to others. The acquisition of these programs and their use by the Defendants, and/or their assisting of third parties in obtaining the benefits of Mitchell's programs, is illegal and was done knowing that they were using the programs or offering and the programs to others illegally.

33. Defendants have reproduced, used, copied, sold or distributed to other persons unauthorized copies of Mitchell's copyrighted and protected works, thereby infringing Mitchell's copyrights in violation of Title 17, U.S.C., Section 106 and infringing its trademark. Defendants conduct constitutes a direct, continuing and contributory infringement of Mitchell's copyright and of its trademark; and this infringement was willful.

34. Defendants have used unlicenced copies of Mitchell's programs, which they had not acquired through Plaintiffs, thus avoiding payment of the monthly fees to Plaintiffs.

35. As a result of the infringement by Defendants, Mitchell has sustained and continues

**Complaint and Demand for Injunctive Relief**
- página 8

to sustain substantial injury, loss and damages. Furthermore, Mitchell will sustain irreparable injury and harm if Defendants' conduct is not permanently enjoined. Likewise, ABC Infotech has been caused damages, unnecessary expenses, loss of subscription and commissions and loss of good will by Defendants' conduct.

36. The activities of Defendants have caused confusion or mistake and were meant to deceive potential customers into believing that the defendants had been authorized to estimate the damages to their vehicles using Mitchell's programs. This has caused confusion and deceit to the general public.

37. In the case of Taller Ramos the customers they served with illegal Mitchell programs most likely suffered economic losses as the pirated program they used was a January 2001 Data Version, which, accordingly, was not up to date and did not reflect the most recent prices for the damaged parts in the market.

38. Mitchell has suffered irreparable injury as a result of the Defendants' conduct as outlined in this Complaint and is likely to it will continue to suffer irreparable injuries unless the Defendants' are permanently enjoined.

39. Upon information and belief, the Defendants' activities were willful, wanton or in reckless disregard to Mitchell's rights.

40. Defendants have engaged in the unlawful usage and/or copying and/or reproduction of Plaintiff's copyrighted computer programs or its trademark without approval or license in violation of the United States copyright and trademark laws.

41. Some of the violators involved in the Cease and Desist extrajudicial process and/or those charged in this Complaint were initially legally subscribed to the software service and became

**Complaint and Demand for Injunctive Relief**                                                                                       - página 9

illegal users when they continued using Mitchell's software after they stopped their subscription service payments as per the "End User Agreement" terms and conditions. Despite the software timing out, some of the Defendants continued the software use by obtaining illegal updates. In some cases an authorized Mitchell representative had uninstalled the software, as per the agreement terms, and then the shop proceeded to have it re-installed by unauthorized third parties. Other auto body shops who had never subscribed to the Mitchell software service, proceeded to illegally obtain the service through unauthorized third parties.

### IV.   SPECIFIC ALLEGATIONS AS TO EVERY DEFENDANT NAMED IN THE COMPLAINT

42.     Defendant Miguel Gonzalez is the owner of a going business concern known as MiolvetteAuto Collision, which is located at Carr. 190, Km 9.2, Sabana Bajo, Puerto Rico. Miguel Gonzalez subscribed to Mitchell's UltraMate™ program on January 1997. The contract was renegotiated on May 30th, 2001. However, the service was discontinued on several occasions for lack of payment; most recently on March 2002. Their current outstanding billed account balance is $2,970.90. Also in default, is their remaining subscription balance of $8,582.60. On June 7th, 2002 an agent of Consultants and Resources International visited this shop with a car in need of body repairs and was given an illegal UltraMate™ estimate done with Mitchell's Data Version of May 2002. A Cease and Desist letter from Mitchell International was hand delivered on July 18th, 2002 to this shop. Subsequently, defendant failed to meet the terms of a verbal agreement to settle damages caused to Mitchell; leaving no alternative but to sue them for the violations described in this Complaint.

43.     The wilfulness in violating the copyrights and trademark of Mitchell by Miguel

**Complaint and Demand for Injunctive Relief** - página 10

Gonzalez as owner of Miolvette Auto Collision is made evident, not only by his ignoring a verbal agreement and Mitchell's Cease and Desist demand, but by his continued use of Mitchell's programs after the Cease and Desist letter of July 18th, 2002, as shown by Computer records obtained in discovery made in a case entitled <u>Mitchell v. Luis Rodríguez</u>, Civil No. 03-1031 (SEC). On July 8th, 2003 Miolvette Auto Collision was visited again by an agent of Consultants and Resources International with a car in need for repairs. The agent was given an illegal Ultramate™ estimate, this time done with a May 20th, 2003 Ultramate Data Version.  This estimate was numbered 2104 while the June 7th, 2002 estimate was numbered 399.  Plaintiffs have cause to believe that Miolvette has done extensive illegal use of the Mitchell Ultramate™ in a willful manner.

44.     Defendant Martin Navarro is the owner of a going business concern known as R & R Auto Repair, which is located at Calle Fernandez Garcia, Luquillo, Puerto Rico.  Martin Navarro subscribed to Mitchell's UltraMate™ program on December 2000. However, the service was discontinued for lack of payment on March 31st, 2002.  Their current outstanding billed account balance is $2,640.80.  Also in default, is their remaining subscription balance of $6,932.10.  On May 30th, 2002 an agent of Consultants and Resources International visited this shop with a car in need of body repairs and was given an illegal UltraMate™ estimate done with Mitchell's Data Version of May 2002.  A Cease and Desist letter from Mitchell International was hand delivered on July 18th, 2002 to this shop.  Subsequently, defendant failed to meet the terms of a verbal agreement to settle damages caused to Mitchell; leaving no alternative but to sue them for the violations described in this Complaint.

45.     The wilfulness in violating the copyrights and trademark of Mitchell by Martin Navarro as owner of R&R Auto Repair is made evident, not only by his ignoring a verbal agreement

and Mitchell's Cease and Desist demand, but by his continued use of Mitchell's programs after the Cease and Desist letter of July 18th, 2002, as shown by computer records obtained in discovery made in a case entitled <u>Mitchell v. Luis Rodríguez</u>, Civil No. 03-1031 (SEC). On July 7th, 2003 R&R Auto Repair was visited again by an agent of Consultants and Resources International with a car in need for repairs. The agent was given an illegal Ultramate™ estimate, this time done with a May 30th, 2003 Ultramate Data Version. This estimate was numbered 259 while the May 30th, 2002 estimate was numbered 581. Plaintiffs have cause to believe that R&R Auto Repair has done extensive illegal use of the Mitchell Ultramate™ in a willful manner. Furthermore, plaintiffs have reason to believe that R&R Auto Repair deleted the Mitchell Ultramate™ software and later proceeded to reinstall it, as the system generates consecutive number sequences. This reflects willful intent.

46. Defendant Edgardo Hernandez is the owner of a going concern known as PR Exclusive Body Paint, which is located at Calle Ronda #217, Villa Andalucia, Rio Piedras, Puerto Rico. Edgardo Hernandez subscribed to Mitchell's UltraMate™ program on January 2001. However, the service was discontinued for lack of payment on May 25th, 2002; after this customer returned unopened the May 2002 UltraMate™ CD sent to him by Mitchell. The returned CD included a letter by the client stating he would not continue payments to the subscription; which at the time had an outstanding billed account balance of $1,650.50. Also in default, is their remaining subscription balance of $6,932.10. On June 6th, 2002 an agent of Consultants and Resources International visited this shop with a car in need of body repairs and was given an illegal UltraMate™ estimate done with Mitchell's Data Version of May 2002; the very same CD version this client returned unopened. A Cease and Desist letter from Mitchell International was hand

**Complaint and Demand for Injunctive Relief**                                                                  - página 12

delivered on July 19th, 2002 to this shop.  Several subsequent efforts to negotiate an out of court settlement with this defendant were unsuccessful, as the defendant refused to negotiate.

47.     The wilfulness in violating the copyrights and trademark of Mitchell by Edgardo Hernandez as owner of PR Exclusive Body Paint is made evident, not only by his refusing to negotiate after Mitchell's Cease and Desist demand, but by his continued use of Mitchell's programs after the Cease and Desist letter of July 18th, 2002.  This has been amply established by computer records obtained from Luis Rodriguez, his illegal supplier, in a pending litigation known as Mitchell v. Luis Rodríguez, Civil No. 03-1031 (SEC).  Furthermore, On June 24th, 2003 PR Exclusive Body Paint was visited again by an agent of Consultants and Resources International with a car in need for repairs.  The agent was given an illegal Ultramate™ estimate, this time done with a November 2002 Ultramate Data Version.  This estimate was numbered 362 while the June 6th, 2002 estimate was numbered 68.  Plaintiffs have cause to believe that PR Exclusive Body Paint has done extensive illegal use of the Mitchell Ultramate™ in a willful manner.

48.     Defendant Doris García is the owner of a going concern known as Garage García a/k/a Garage López, which is located at Calle 23 #397, Sabana LLana, Rio Piedras, Puerto Rico. Doris García subscribed to Mitchell's UltraMate™ program on January 1999. However, the service was discontinued for lack of payment on September 2000.  At the time of the termination the client had an outstanding billed account balance of $1,650.50.  Also in default, is their remaining subscription balance of $9,572.90.  On February 21st, 2002 an agent of Consultants and Resources International visited this shop with a car in need of body repairs and was given an illegal UltraMate™ estimate done with Mitchell's Data Version of January 2002. A Cease and Desist letter from Mitchell International was hand delivered on July 18th, 2002 to Mrs. Doris Garcia.  Several

**Complaint and Demand for Injunctive Relief** - página 13

subsequent efforts to negotiate an out of court settlement with this defendant were unsuccessful, as the defendant refused to negotiate.

49. The wilfulness in violating the copyrights and trademark of Mitchell by Doris Garcia as owner of Garaje García is made evident, not only by her refusing to negotiate after Mitchell's Cease and Desist demand, but by her continued use of Mitchell's programs after the Cease and Desist letter of July 18th, 2002. This has been amply established by computer records obtained from Luis Rodriguez, her illegal supplier, in a pending litigation known as <u>Mitchell v. Luis Rodríguez</u>, Civil No. 03-1031 (SEC). Futhermore, On June 20th, 2003 Garaje García was visited again by an agent of Consultants and Resources International with a car in need for repairs. The agent was given an illegal Ultramate™ estimate, this time done with a March 2003 Ultramate Data Version. This estimate was numbered 458 while the February 21st, 2002 estimated was numbered 556. Plaintiffs have cause to believe that Miolvette has done extensive illegal use of the Mitchell Ultramate™ in a willful manner. Furthermore, plaintiffs have reason to believe that Garage García deleted the Mitchell Ultramate™ software and later proceeded to reinstall it, as the system generates consecutive number sequences. This reflects willful intent.

50. Defendant Ottoniel Landrau is the owner of a going concern known as Landrau Auto Repair, which is located at Carr. 21, Km 3.2, Bo. Monacillos, San Juan, Puerto Rico. Ottoniel Landrau subscribed to Mitchell's UltraMate™ program on June 1995. He renewed the subscription in the years 1996 and 1997. However, the service was discontinued for lack of payment on April 29th, 1998. At the time of the termination the client had an outstanding billed account balance of $2,471.00, plus 15% collection agency fees of $370.65. On February 25th, 2002 an agent of Consultants and Resources International visited this shop with a car in need of body repairs and was

given an illegal UltraMate™ estimate done with Mitchell's Data Version of January 2002. A Cease and Desist letter from Mitchell International was hand delivered on July 18th, 2002 to this client. Several subsequent efforts to negotiate an out of court settlement with this defendant were unsuccessful, as the defendant refused to negotiate.

51. Defendant José Quiñones Valentín is the owner of an ongoing business concern known as Taller Quiñones, located at Carr. 210 Km 3.6, Bo. Santana, Sabana Grande, Puerto Rico. José Quiñones Valentín suscribed to Mitchell's Ultramate™ program on July 15th, 1999. The service was discontinued on January 2001 due to lack of payments. The current outstanding balance on that contract is $1,650.50 plus 15% collection agency fees of $247.58. During the discovery process in a litigation known as <u>Mitchell v. Luis Rodríguez</u>, Civil No. 03-1031 (SEC), plaintiffs obtained records and documentary evidence from Luis Rodriguez that establish that Jose Quiñones had been allegedly purchasing Ultramate™ update services from Luis Rodriguez on a regular basis since January 2002. On August 5th, 2003 an agent of Consultants and Resources International visited Taller Quiñones with a car in need of body repairs and was given an estimate done using Mitchell's Ultramate Data Version of February 2003. Plaintiffs have cause to believe that Taller Quiñones has wilfully done extensive use of the Mitchell Ultramate program.

52. Defendant Pablo Lugo is the owner of an ongoing business known as Parcelas Auto Body Repair which is located at Carr. #3, KM 55.4, Barrio Aguas Claras, Ceiba, Puerto Rico. Pablo Lugo susbscribed to Mitchell's Ultramate™ program on April 3rd, 1988. However, the service was discontinued on May 1999 and collection agency efforts followed. Their current outstanding balance is $2,485.00 plus 15% collection agency fees of $372.75. During the discovery process in a litigation known as <u>Mitchell v. Luis Rodríguez</u>, Civil No. 03-1031 (SEC), plaintiffs obtained records

and documentary evidence that establish defendant Pablo Lugo had been obtaining update services from Luis Rodriguez since June 2002. On July 9th, 2003 an agent of Consultants and Resources International visited Taller Quiñones with a car in need of body repairs and was given an estimated done using Mitchell's Ultramate Data Version of May 2003. Plaintiff has reason to believe that Parcelas Auto Body Park has made extensive use of the Mitchell Ultramate program in a willful manner.

## V.   VIOLATIONS OF LAW CHARGED AGAINST ALL DEFENDANTS
## COUNT I - INFRINGEMENT OF COPYRIGHT NO. TX 5-354-409

53. Mitchell adopts by reference paragraphs 1 to 52 of this Complaint.

54. Defendants have infringed Mitchell's copyrights to its UltraMate™ computer program (Certificate of Registration No. TX-5-354-409) by illegally reproducing and/or using Mitchell UltraMate™ program without paying Mitchell its license subscription fees and by allowing the installation of the programs by persons or businesses not licensed to do so.

55. The Copyright Act provides a number of remedies to copyright owners. Section 502 of Title 17 U.S.C. provides, in its pertinent part, for injunctive relief. Section 503 of the Copyrights Act gives power to this Court to order the impoundment and disposition of infringing articles. Section 504 of Title 17, U.S.C., provides for the award of damages and profits to the copyright owner, indicating that, in general, the infringer is liable for: (1) the copyright's owner actual damages and any additional profit of the infringer, as provided by subsection (b); or statutory damages, as provided in subsection (c).

56. Plaintiff Mitchell is entitled to have all defendants permanently enjoined from:

   1. Infringing or assisting any other person or entity in infringing Mitchell's

    copyrights.

  2.  Unfairly competing with Mitchell or assisting any other person or entity in unfairly competing with Mitchell.

57.  Because of Defendants' infringement of Mitchell's copyright, Mitchell is entitled to injunctive relief, monetary damages and the impoundment and destruction of all the infringing programs that may be in possession of any of the Defendants, together with costs and attorney's fees pursuant to Title 17, U.S.C., Sections 502 to 505.

### COUNT II - INFRINGEMENT OF TRADEMARK NO. 1980802

58.  Mitchell adopts by reference paragraphs 1 to 57 of this Complaint.

59.  Mitchell possesses a duly registered trademark right over its UltraMate™ program. This trademark (Registration No. 1980882) is very visible in its CD-Roms, its manuals, and in every estimate printed using the UltraMate™ program.

60.  Defendants are well aware of the trademark protection of Mitchell's UltraMate™ program and all of its other computer programs.

61.  Defendants have infringed Mitchell's trademark rights by illegally reproducing or facilitatating the reproduction of Mitchell's UltraMate™ program, and by using it without paying Mitchell its license subscription fees and by allowing the installation of the programs by persons not licensed to do so.

62.  Because of Defendants' infringement of Mitchell's trademark, Mitchell is entitled to injunctive relief, monetary damages and the impoundment and destruction of all the infringing programs that may be in possession of any of the Defendants, together with costs and attorney's fees.

### COUNT III - UNFAIR COMPETITION UNDER LANHAM ACT

63. Mitchell adopts by reference paragraphs 1 to 62 of this Complaint.

64. Mitchell has spent substantial sums in advertising, promoting and marketing its programs throughout the United States and Puerto Rico and in the development of its market and customer base. It has also spent substantial capital resources in the engineering of its programs and their continued update.

65. As a result of Mitchell's advertising, promotion and marketing activities; its engineering; the continued improvement and updating of its programs and other related activities and efforts, plaintiff Mitchell enjoys a highly valuable good will throughout the United States and Puerto Rico. Through the efforts of plaintiff ABC Infotech, it has developed a strong market for its programs in Puerto Rico. Those efforts by ABC Infotech have been at a larger cost to Mitchell and ABC Infotech, Inc.

66. Defendants undertook an intentional course of conduct to benefit from and trade upon plaintiff Mitchell's good will and to deceive potential customers into believing that there was an affiliation, connection or association between the programs offered by the Defendants to estimate loses for their clients and Mitchell's programs; and/or that Mitchell or ABC Infotech had approved the use, copying or sale of their loss estimation programs by the Defendants.

67. The cumulative total of Defendants' activities constitutes unfair competition in violation of Title 15, U.S.C., Section 1125(a), which conduct is highly detrimental to plaintiffs Mitchell and ABC Infotech.

68. Plaintiffs Mitchell and ABC Infotech have suffered substantial monetary damages as a result of the activities of the Defendants and Mitchell is likely to suffer irreparable injury unless Defendants' activities are permanently enjoined, as they can repeat these activities at any time, even

**Complaint and Demand for Injunctive Relief**                                                                                          - página 18

if they have stopped doing them.

69.    Upon information and belief, the Defendants' activities were engaged in a willful, wanton and reckless disregard for plaintiff Mitchell's rights and their conduct entitles Mitchell to profits, damages and costs and attorneys' fees.

### COUNT IV - VIOLATION OF CONTRACT

70.    Mitchell adopts by reference paragraphs 1 to 69 of this Complaint.

71.    Each of the defendants entered into an "End User License Agreement" with Mitchell, which requires monthly payments. The termination of this Contract before its completion imposes upon the particular auto body shop the obligation to pay the monthly rent and provides for the recovery of an unexpired contract subscription balance.

72.    Mitchell is entitled to collect from each defendant, for violation of the terms of their contracts, all outstanding account balances and the remaining subscription balance, which amounts have been described in this Complaint.

### RELIEF REQUESTED BY PLAINTIFF

**WHEREFORE**, Plaintiffs most respectfully demands that judgment be entered against each and all Defendants granting Mitchell and ABC Infotech the following relief:

1. Permanently enjoining each Defendant from:
   a. Infringing or assisting any other person or entity in infringing Mitchell's copyrights and trademark.
   b. Unfairly competing with Mitchell or ABC Infotech or assisting any other person or entity in unfairly competing with Mitchell or ABC Infotech.
   c. Ordering Defendants to surrender to Mitchell all infringing articles and programs and the means to produce infringing articles while this action is

        pending and order the destruction, or other reasonable disposition, of such things as part of any final judgment or decree.

    d.    Ordering Defendants to deliver to ABC InfoTub, Mitchell's representatives for destruction all programs, documents and articles in their possession that infringe Mitchell's copyrights and the destruction, or other reasonable disposition of such things, as part of a final judgment or decree pursuant to 17 U.S.C. Sections 501 and 503.

    e.    Ordering Defendants to provide an accounting of all their illegal damages estimates using Mitchell's programs to clients in Puerto Rico and elsewhere and an accounting for all the times they have illegally provided any other persons with illegal updated versions of any Mitchell program using any of the Mitchell programs they may have obtained access to; and how much they have earned by illegally using Mitchell's programs and/or providing such programs to friends, clients, customers or any third party.

2.    Awarding monetary damages in an amount sufficient to allow Mitchell and ABC Infotech to recover all damages, costs and expenses they have suffered as a result of Defendants' conduct and for not less than $75,000.00 per defendant under the Copyright and $ 75,000.00 per defendant under the Lanham Trademark act.

3.    Awarding punitive or enhanced damages as permitted by law.

4.    Awarding Mitchell and ABC Infotech the costs and attorneys' fees of this proceeding.

5.    Awarding Mitchell's and ABC Infotech's reasonable attorneys' fees, which are estimated at no less than $75,000.00.

6.    Awarding Mitchell all it is owed from defendants on the outstanding billed balances of their contracts and what is due from each for the remaining subscription balance.

**Complaint and Demand for Injunctive Relief** - página 20

7. Such other and further relief as this Court deems just and proper.

8. Plaintiffs hereby demand trial by jury on all issues.

**RESPECTFULLY SUBMITTED.**

In Guaynabo, Puerto Rico, this _____ day of November, 2004.

> **Dennis A. Simonpietri**
> **USDC-PR 117913**
> Counsel for Plaintiff
> Edificio Tres Rios, Suite 300,
> #27 Ave. Gonzalez Guisti
> San Patricio, Guaynabo, PR 00968
> Tel. 787-751-2579/ Fax 787-759-676